JAMES H. TRAMMELL AND OTHERS v. S. G. SWAN, ADM'R.

Where one of the parties to a simulated contract executes to the other his note, the consideration of which is, for instance, the pretended purchase of a stock of goods, by which pretended sale the property in the goods did not pass to such pretended purchaser, and the latter induces a third party, in ignorance of the facts and under a deception practiced upon him, to sign the note as surety, the signature of the surety thus procured (the facts being suppressed from him, and the transaction apparently a real and *bona fide* sale by an administrator under an order of court,) operates a virtual fraud upon the surety, and he may avoid the contract.

A plea setting up these facts presents a good defence to an action on the note in the hands of the payee.

When the capacity in which the plaintiff sues and seeks to recover is not put in issue by plea, it is unnecessary on his part to prove his representative character, or his right to recover in that character upon the trial.

John J. R. Legrand sued on a promissory note, using in his petition the terms "your petitioner, a resident citizen &c., *administrator of the estate*

·*of*, &c.''; the petition averred also that the note was the property of the *plaintiff's intestate*, which was not put in issue by the pleadings. The defendants insisted that the suit was not brought by the plaintiff in his representative capacity. Held, that under the pleadings the plaintiff was not required to prove the ownership of the note as alleged, and that under that aspect .f the case it was not material whether the suit was brought in the plaintiff's own right, or in his representative capacity.

Where a party has had ample time to plead, and after pleadings and amendments had, after the case was called for trial, been ruled upon by the court, the court may well refuse to entertain further amendments, and it is not error to reject a plea setting up a new defence, pleaded by way of amendment under the circumstances above mentioned.

An administrator cannot receive notes and accounts upon third parties in payment of a debt due to the estate, without having a proper order for that purpose from the County Court; and the doctrine of estoppel *in pais* will not avail the party giving such notes or accounts as payment, as a defence against the debt due the estate, beyond the amount of money which may have been realized from them.

APPEAL from Rusk. Tried below before the Hon. C. A. Frazer.

This was a suit brought by John J. R. Legrand against James H. Trammell, Mark Stroud, William Moore and Jesse Walling, on a promissory note payable to the plaintiff, "administrator of the estate of John S. Caruthers deceased, or bearer," for the sum of eighteen thousand seven hundred and twenty-four dollars and forty-five cents, dated the 1st day of September, 1852, and payable twelve months after date. Suit was filed November the 4th, 1853.

The consideration of the note was the sale under an order of the County Court, at private sale by the administrator, J. J. R. Legrand, of a stock of goods belonging to the estate of John S. Caruthers, deceased, at which Trammell became the purchaser and the other defendants his sureties.

The petition, in effect, (so far as it is material to state its contents,) is as follows:

"Your petitioner, John J. R. Legrand, a resident citizen of the county of Rusk, and State of Texas, administrator of the estate of John S. Caruthers, complains of" said defendants, (naming them) "in this, that said defendants made and delivered to your

petitioner their joint and several promissory note," describing the note and making it a part of the petition; alleging liability of defendants, and their failure to pay the same, and concluding in the usual form with a prayer for process and judgment.

The defendants pleaded payment on the note to the amount of fifteen thousand and seventy-three dollars and four cents. Subsequently, during the progress of the suit, further payments were pleaded, as having been made since the institution of the suit. The character of these payments was set out in the defendants' respective answers setting them up, as the receipts of attorneys for notes received by them from Trammell for collection; claims paid or "taken up" by said Trammell against the estate of Caruthers; accounts on the books of J. H. Trammell & Co.; and "good notes belonging to J. H. Trammell & Co."; which evidences of indebtedness, or *choses* in action, were fully specified with the accompanying receipts of Legrand, the administrator, acknowledging that he had received said claims as payments to be credited on the note on which the suit is brought.

The plaintiff filed general and special exceptions to the answers of the defendants.

The plaintiff amended his petition, (filed November 2d, 1857,) and alleged that the note is the property of the estate of Caruthers; that the estate is insolvent; that the receipts given by him were conditional, and were to be regarded as evidences of payment no further than for the amount of cash that might be collected on said notes and claims; that he collected no more on these notes and claims than the auditor's report shows, the balance of them being insolvent; that he was appointed administrator, &c. (stating the time); that the note was in consideration of property of said estate, sold to defendants; and that said note now belongs and has always belonged to said estate.

The defendant, Walling, filed a separate answer, alleging in substance, that he signed the note sued on as security for James H. Trammell; that Legrand, the administrator, well knew this fact; that Legrand and Trammell, before the pretended sale of said goods, had entered into an agreement that said Trammell

should become the purchaser of said goods for himself and Legrand; that after said pretended sale said Legrand had still possession and control of said goods, and was selling the same for himself and said Trammell up to the date of filing this plea; that there was no public sale of said goods; that they were sold privately; that at the execution of said note defendant, Walling, was entirely ignorant of the arrangement between Legrand and Trammell; that the title to said goods never passed out of said Legrand as administrator; that this defendant has no interest in or control of said goods; that for the above reasons said sale was null and void, and defendant not liable on said note.

The plaintiff filed general and special exceptions to *all* the answers of the defendants filed by them jointly or separately; the ground taken in the special exceptions to the amended answers of defendants being a want of authority, as administrator, to receive anything in discharge of a debt due the estate except money, without an order of court.

During the progress of the suit Legrand was removed from the administration of the estate, which was suggested, and his successor, Samuel G. Swan, made himself a party plaintiff in the suit.

The defendants filed a general and special exception to the original and amended petition of the plaintiff, and excepted to Swan's being made a party plaintiff, because said petitions show that said plaintiff has had, and has now, no legal cause of action against these defendants. "And defendants also except to S. G. Swan's making himself a party plaintiff in this suit as the administrator of the estate of John S. Caruthers, or in his own right, because the pleadings of the plaintiff show that said Swan cannot of right be made a party plaintiff, as will appear from inspection of the papers filed in this cause."

The cause was called for trial on the 28th day of May, 1858, and the application of the defendants for a continuance was overruled; and leave of the court was granted to the defendants to amend, and on the same day filed an amendment to the plea of payment. On the next day the trial proceeded, and the defendants' demurrer or exceptions to the plaintiff's petition, were over-

ruled, and the defendants asked leave to amend by pleading the statute of limitations, which application was refused.

Thereupon, the court ruled that " the exceptions of the plaintiff to the answers of the defendants being considered of by the court, are sustained to such extent as to reduce said answers to pleas of payment in money, with leave to amend." The defendants amended their plea of payment, alleging that the plaintiff received and realized the monies for the several *choses* in action delivered to him, and received them as cash payments, and that it was understood by said Legrand that all of said items were received by him as equivalent to cash payments, and were to be credited on the note; and also filed a plea of the statute of limitations to the note sued on, averring that the cause of action accrued more than four years before the filing of plaintiff's amended petition filed on the 2d day of November, 1857. To which plea of the statute of limitations plaintiff excepted, because

1st. " Said defence was not included in any of the pleas excepted to by plaintiff, the exceptions to which were sustained."

2d. " The said defence was not embraced in the leave given by the court to amend."

3d. " Said defence is for the first time attempted to be set up, after an announcement of readiness for trial, and after all exceptions to the pleadings have been presented and acted on by the court."

These exceptions were sustained by the court as to the plea of the statute of limitations, and " to such an extent as to reduce the answer as amended to a plea of payment in money."

The court instructed the jury " to find a verdict for the plaintiff for the amount of the note sued on, after allowing the defendants a credit for all the amounts of money paid by them or either of them, or realized by the plaintiff on the notes and property turned over to him by them, or either of them, to collect or sell, and apply the proceeds to the note sued on; and that they would treat as money the amount for which said property was sold." The court gave no other charge, except as to the rule for computing the interest on the note, as the same might be affected by payments

made on it; and as to the effect of the admissions of the plaintiff as evidence.

The jury found a verdict for the plaintiff for the sum of ten thousand and eighty-two dollars and forty-six cents, and judgment was rendered thereon for said sum in favor of "Samuel G. Swan, administrator *de bonis non* of the estate of John S. Caruthers, deceased."

The only important questions of evidence excepted to seem to be principally involved in the rulings of the court which have been stated; and the assignment of error embracing other questions will not be here recited. The defendants appealed, and assigned as error

3d. That the court erred in overruling defendants' general exceptions to plaintiff's original and amended petitions, and in overruling defendants' exceptions to the appearance of S. G. Swan, administrator, as the successor of John J. R. Legrand, or in his own right, or as the administrator of the estate of John S. Caruthers, as successor to Legrand's administration of said Caruthers' estate.

4th. The sustaining plaintiff's exceptions to defendants' plea of the statute of limitations.

5th. In sustaining plaintiff's exceptions to the several answers of the defendants, "to such extent as to reduce the answer as amended to a plea of payment in money."

6th. In sustaining plaintiff's exceptions to defendants' amended plea of the statute of limitations, and to his other plea filed May 29th, 1858, "to such an extent as to reduce the answer as amended to a plea of payment in money."

15th. In the charge given to the jury.

*Martin Casey*, for the appellants.—On the supposition that this may be treated as a suit from the commencement by Legrand as administrator, the question under this assignment, and the ruling here excepted to is: Can an administrator receive any thing in payment for a debt due to the estate he represents but money, without an order from the County Court for that purpose,

so as to bind him as administrator? We answer he can, for the following reasons:

By the probate laws of Texas, before an administrator can enter on the duties of his office as such, he is required to give a bond conditioned: " That he shall well and truly perform all the duties required of him under his appointment." These duties are to be ascertained from the entire probate law. Were every act of his, for which no article of that code directly provides, a nullity, there would be no necessity for a bond, since no rights could be acquired by persons dealing with him, nor any rights divested out of the estate he represented; and with such a decision, the only use of a bond would be to guard against the appropriation of the assets of the estate to his own use; then the condition of the bond shall be: " That he should not appropriate the assets of the estate to his own use, nor wantonly destroy the same." The probate law contemplates no such narrow construction; neither does it intend to render null and void every act of an administrator, for which there can be found no literal provision; for it provides that suit may be brought on this bond by any administrator against his predecessor, or by any one injured by a breach of the bond until the entire amount of it be recovered. (Hartley's Dig., Art. 1222.) When an administrator sells lands or slaves, he is required to take notes and security, and a mortgage on the land or slaves; but if he does not take such mortgage, the sale is not a nullity; but he and his securities become liable on his bond for any loss. (Hartley's Dig., Art. 1181.) It is provided under the probate law of 1846: " That every claim for money or personal property, or for land, before it can be acknowledged must be verified by the affidavit of the owner before the judge of probate or a notary public, stating what part is due and unpaid, and not satisfied; and when thus verified and presented, the executor or administrator shall endorse thereon his acceptance or rejection, with the date of presentation." (Hartley's Dig., Art. 1095.) And " that all claims accepted by the executor or administrator shall be presented to the judge, who shall endorse on the same his approval or non-approval." (Hartley's Dig., Art. 1096.) Under that law a claim was allowed and approved without any such affidavit, and

proceedings instituted to recover it from the administrator, who pleaded in bar that the claim had not been authenticated. But the court decided that the administrator was estopped; that he could not defeat the claim. (18 Tex. R., 673; Howard v. Battle.) Thus leaving those interested in the estate to proceed against the administrator on his bond.

A claim was allowed and approved; suit was instituted in the probate court to order its payment; the order was granted; appeal was taken by the administrator to the District Court, and the heirs of the deceased were made parties. Plea: that the claim had been barred when presented. The plea was decided bad on demurrer; and this court sustained that ruling. (Moore v. Hillebrant, 14 Tex. R., 312, and authorities there cited.) This establishes the proposition that the administrator cannot set aside his own acts, when there is neither fraud, imposition, nor mistake.

The receipts of Legrand ruled out by the court, in which Legrand admitted them to be good payments, show that the amounts mentioned in them were credited on the note sued on. These receipts would be conclusive evidence of assets to the extent admitted by him in suit against him by the heirs, legatees, or creditors of Caruther's estate on his bond, on the final settlement of his account as administrator. These solemn acknowledgments of his of assets, would operate as estoppels. "Admissions of a party to the record, or of one identified in interest with him, are, as against such party, admissible in evidence." (1 Greenleaf on Ev., § 171.)

"The admissions of a guardian, an executor, or administrator, made before he was completely clothed with that trust, or of a *prochein ami* made before the commencement of the suit, cannot be received either against the ward or infant in the one case, or against himself as the representative of heirs, devisees and creditors in the other." (Id., § 179.)

This shows, by implication or conversion, that the admissions of executors or administrators, when clothed with power as such, bind them in their representative capacity. And whatever ad-

missions would bind Legrand, must be equally conclusive as estoppels against his successor, S. G. Swan. (Id., § 189.)

"The mere circumstance that one is executor will not vitiate any transaction with him, for the power of disposition is generally incident, being frequently necessary." (1 Story's Eq., § 423.)

"To affect the acts of an executor or administrator, there must be fraud or collusion." (Id., § 580.)

In Murray v. Blachford, (1 Wendell, 563 and 616,) there were three administrators. Two of them released a debt; the third dissenting. The Supreme Court of New York held that the release was binding on the estate.

In Forsyth v. Ganson, (5 Wendell, 581,) it was decided that where there were more than one administrator, the admissions of one would not bind the others; but if there were but one administrator, his admissions would be binding on the estate; and the court decided that the admissions of one of the administrators was competent testimony as a link in the chain.

In 2 Hen. & Mun., (Sale v. Roy, 78,) an executor sold slaves bequeathed to a certain person, a legatee. By the statute of Virginia he could not sell slaves, except to pay debts; and there was no evidence that these slaves were necessary to pay debts. But the court said: "The executor was the judge, and the remedy of the legatee was against the executor and his sureties on his bond, and not against the purchaser of the slaves."

In 5 Cushman, Miss. R., Brown *et al* v. Hill, Brown and McWilliams, on the 28th October, 1844, took out letters of administration in vacation on the estate of Jacob R. Brown. On the 16th April, 1845, plaintiff Hill presented a claim to one of the administrators. On the 29th April, 1845, the probate judge examined and allowed the claim. On the 7th of August, 1848, these administrators moved the court to revoke the letters already granted them in vacation, and to grant them letters in term time, which was accordingly done. No presentation of this claim was made to the administrators after the last grant. On the 13th February, 1851, Hill brought suit on this claim. The defendants argued that the claim was barred, because the first grant of letters was valid, and the second void; but the court decided that the administrators

31Y

were estopped from denying that the second grant of letters was valid. Thus showing that administrators are estopped by their own acts as well as other persons; that estoppels are binding on all persons without distinction as to their office or capacity.

In Oglesby v. Gilman, (5 Ga. R., 56,) it is decided that a sale of negroes by an administrator, under an order of the court, is an administration as to them, and vests the note taken for them in the administrator individually, and he and his securities are responsible for the amount of that note. This being so, he could treat that note as his own property, and take payment for it in any manner he pleased; and having admitted that payment, he could not repudiate his own acts and set up his fiduciary capacity as an excuse for practicing a fraud on the person from whom he acknowledged he had received payment.

In Coombs v. Lane, (17 Tex. R., 280,) Coombs, administrator, brought suit and obtained judgment against Lane for notes given at administrator's sale for land. At the sale the administrator represented that the estate had a good title to the land; but it had none. Improvements were made by the purchaser. He brought suit against the administrator to enjoin the judgment on the notes, and to recover for the improvements. He succeeded, and had the judgment perpetually enjoined. Here the estate was not allowed what had been obtained by the fraud of the executor; and the only remedy against the administrator by those interested in the estate, for the expense of these suits, was on his bond: at least he may be reached by a suit on the bond. Applying this case to Legrand's conduct, the estate would not be permitted to enjoy the amount of the goods and claims received by him from the defendants in this suit; and for those amounts he was liable to the estate; nor will the court force the defendants to bring a separate suit against Legrand for those claims and the property mentioned in his receipts, on his bond; nor against him individually, as he may be insolvent, but will give them the benefit of these payments, as "the law abhors a multiplicity of suits."

In Carr v. Rowland, (14 Tex., R., 278,) the court says: "The right of an administrator to sue and be sued in a representative

capacity, implies the right to bind the estate generally." If so in a suit, why not on principle without suit?

"Property purchased by an administrator with the funds of the estate, belongs to the heirs, and may be claimed by them." (14 Tex. R., Parker v. Portis.) Hence, whatever Legrande received for the note became the property of the estate, for which he would be liable on his bond.

In Duncan v. Watson, (6 Cushman, Miss. R., 187,) a note was made payable to Benjamin Blanton, who indorsed the note. The note was made payable at the Bank of the State of Mississippi. Blanton, the payee and indorser, died before the maturity of the note. In November, 1839, the plaintiff in error, Duncan, brought suit on this note against James Watson, administrator of Blanton. The suit continued in court until October, 1846, when it appeared that James Watson had made a final settlement of his administration and resigned; and that letters *de bonis non* on the estate of Blanton had issued to Lewis C. Watson, who was made a party defendant.

"On the trial in the court below, the plaintiff, in order to show notice of presentment and non-payment, offered in evidence a letter written by James Watson while he was administrator, to Watt, Burke & Co., tending to show an admission of the claim; and the plaintiff also offered to prove by a competent witness, that in March or April, 1837, James Watson, whilst administrator, admitted to him that he had legal notice of the presentment and non-payment of the note. This evidence was objected to by the defendant, and was not permitted to go to the jury, which constitutes the principal ground of error insisted on by the plaintiff," page 205, 206.

It was contended by the defendant, that though this may have been legal testimony whilst James Watson was administrator and defendant, it would not be competent testimony when Lewis C. Watson became the defendant and successor of James, because, as alleged, there was no privity of interest or estate between them. In reply to this, the Supreme Court of Mississippi say, page 206, 207:

"But in many respects, the acts of the administrator within the

sphere of his duty and power are obligatory on his successor so far as to charge the estate. They bind the administrator *de bonis non*, because the estate came to his hands charged with them by acts of the adminstrator, which he might legally do in the management of the estate in his hands. *If this were not so, the admission of payment of a debt due the estate, or the execution of a receipt therefor, which is but another form of admitting payment by the administrator, would not bind the estate in the hands of his successor; and the administrator would be capable of doing no act however legitimate to the management of the estate, and in whatever good faith done, that could create a liability upon the estate, or continue one already existing.*

"We take it to be clear, that an administrator may make admissions, which will bind the estate, provided he acts in good faith, and with due regard to the best interest of the estate, and in a matter necessarily connected with its administration."

Legrand certainly knew the solvency of the parties against whom he received the claims in liquidation of the note sued on, and he must have believed that those claims could have been converted into money, sooner than the money could be otherwise collected on the note; and being then acting under oath, the presumption is that he was acting *bona fide* for the benefit of the estate; and the plea of want of power in him to receive any thing in discharge than money was an after thought, or else, which is hard to believe, he intended to practice a fraud on the appellants by his ambidextrous shuffling from his individual to his fiduciary character, which will not be tolerated by this court.

Dickenson v. McDermott's Ex., (13 Tex. R., 248,) is nearly in point. Dickenson had executed his note to the executors of McDermott for $399 88 cents, and the estate was indebted to him on a probated account for $237 88 cents. This account was delivered to one of the executors, who agreed in writing to credit the note sued on with the account. This promise induced him to make no defence to the note. Judgment was taken without any credit, and execution issued. Dickenson paid the balance due after deducting the probated account, and enjoined the remainder of the judgment. An exception was taken to the injunc-

Trammell v. Swan.

tion bill and sustained; but this court decided that was error, and reversed the judgment of the District Court. The Supreme Court say: "Where payment (especially after the commencement of a suit) is made, in confidence that it will be credited, and particularly where there is an agreement to that effect, and the credit is not given, but judgment is taken for the whole amount, the party thus wronged may have his remedy by injunction; or, if he be compelled to pay the judgment, he may by action recover the sum twice paid, (Clay v. Clay, *ante*;) and whether the payment be by money, or property, or a just discount received and admitted as payment, cannot affect the rule."

Here the doctrine is laid down, that an executor or administrator may receive payment in money, or property, or discount; and when he admits payment, the estate is bound by his admission.

In Thomas v. Brooks, (6 Tex. R., 369,) slaves had been sold at sheriff's sale to satisfy an execution against the administrator as such, he being present at the sale. After these slaves had passed through several claimants, the administrator sued for their recovery. The statute of limitation was pleaded in bar. The Supreme Court say: "The fact that the appellant is suing as administrator can not be any advantage to him or prejudice to the defendant. If an administrator has either been so faithless or negligent, that he suffered a good cause of action to be barred, by which the estate he is representing is injured, the answer is, as was said in Swenson v. Walker's administrators, that he must account to those interested in the estate as best he may. If the statute of limitation was out of the question, his long acquiescence under the sale to which he had consented, until the property had passed through different hands for a valuable consideration, might well be set up against him as an estoppel *in fact*."

In this case there is no distinction made between the acts of administrators and others, amounting to estoppels; and the estate is held bound by the voluntary acts of the administrator.

In Swenson *et al.* v. Walker's administrators, 3 Tex. Rep., 93, a probated account against the estate of Walker, in favor of McKinney & Williams, was assigned by the owners to Swenson. Before Swenson's purchase, he asked the administrators if the ac-

count was just. They answered it would be paid. This court decided that they were estopped by their representations, and say, " if permitted to contradict statements so made, on which the party to whom they were made acted, such permission might operate to the serious injury of the party who was misled by them." (Page 98.)

" We are not aware that her suing in a representative capacity can confer on her any right to commit a fraud on an innocent person, and then shelter herself from the consequences of such fraud, under the pretext of acting in a fiduciary capacity."

We ask that the same reasoning and language be applied to the appellee in this case.

The ruling complained of by this assignment completely struck out the separate answer of Walling, and the separate answer of Stroud, Walling & Stroud, because sureties of Trammell on the note sued, (and this fact is proved by the plaintiff in Legrand's report of sale, if that report is properly in evidence,) supposing the sale to have been made to Trammel alone, having, as we must presume, entire confidence in Trammell that he would sell the goods and apply the proceeds to the payment of the note. But by the allegations in their separate answers, Legrand never parted with the possession of the goods, but controlled them and their proceeds, selling them himself, these defendants being entirely ignorant of such understanding between Legrand and Trammell. And on exceptions, the facts stated in these answers must be taken as true. The order of the county court was to sell the goods at private sale. These sureties could not for a moment suppose that Legrand would sell these goods to himself and another jointly. Legrand ought to have communicated that fact to these sureties before they signed the notes, as they object and refuse to become Legrand's sureties when selling the goods of his intestate to himself. The concealment of this agreement between Legrand and Trammell, was a gross fraud on the sureties, and sufficient to vacate the sale as to them, and render the whole transaction null and void.

" There are cases of intrinsic circumstances, in which courts of law and courts of equity both proceed upon a doctrine strictly

analogous to that of the Roman law, and treat the concealment of them as a breach of trust and confidence justly reposed. Indeed, in most cases of this sort, the very silence of the party must import as much as a direct affirmation, and be considered equivalent to it." (1 Story's Eq., sec. 214, and authorities in the note to this.)

In 1 Brod. & Bing., 289, Martin v. Morgan, 5 Eng. C. L. R., 87, where the defendants presented for payment a post-dated check, knowing it to be post-dated, and that the maker of it was insolvent, and the plaintiffs, in ignorance of these circumstances, paid the check for the honor of the maker, expecting funds from him in a short time, though they had none at the moment, a verdict having been taken for the debt, the court granted a new trial.

Richardson, J., in delivering the opinion of the court, said: "It is not necessary to go into the grounds of the illegality of the draft, but it is sufficient that the parties did not deal on equal terms. The defendants knew that Burmester & Co. were in a state of probable insolvency, and concealed this from the plaintiffs, who were ignorant of it. This brings the case within the rule of law, that a party paying money in ignorance of circumstances with which the receiver is acquainted, is not on equal terms with him, and therefore entitled to recover it back." And "Dallas, chief justice, expressed his regret, that in consequence of a mistake, the plaintiffs had been confined to a motion for a new trial instead of being allowed to enter a verdict."

If the plaintiffs in that case, instead of paying the check, had accepted it or given their note, and suit had been brought on the acceptance or note, no doubt, from the above decision, there could be no recovery against them.

"Thus, if a party taking a guaranty from a security, conceal from him facts which go to increase his risk, and suffers him to enter into the contract under false impressions as to the real state of the facts, such a concealment will amount to a fraud, and the omission to make it known, under the circumstances is equivalent to an affirmation that the facts do not exist." (1 Story's Eq., sec. 215, and authorities cited in his note to this section.)

In Pidlock v. Bishop, 3 B. & Cresw., 605, 10 Eng. C. L. R., 197, it was agreed between the vendors and vendee that the latter should pay 10s. per ton beyond the market price, which sum was to be applied in liquidation of an old debt due to one of the vendors. The payment of the goods was guaranteed by a third person, but the bargain between the parties was not communicated to the surety. Held, that that was a fraud on the surety and rendered the guaranty void.

Bayley, J., in delivering the opinion in that case, says : "It is the duty of the party taking a guaranty to put the surety in possession of all the facts likely to affect the degree of his responsibility, and if he neglect to do so, it is at his peril."

"The concealment of that fact from the defendant was a fraud upon him and avoids that contract." And all the judges were of the same opinion. So the concealment of the bargain between Legrand and Trammell was a fraud on the sureties ; they should have been informed of the extent of their responsibility, and of the parties for whom they were to become responsible. (See 1 Story's Eq., sec. 383, and authorities referred to in the note to this section.)

*S. P. Hollingsworth*, also for the appellants.

*H. C. Wallace*, for the appellee.—In the assignments, appellants endeavor to show that an administrator may, without an order of the probate court, receive notes and accounts in absolute payment and extinguishment of a debt due the estate for goods sold by the administrator after the death of the intestate, so "as to charge the estate with the face value of these notes and accounts." In discussing this assignment we shall refer first to the general rule of law regulating contracts of this character, and next to the special regulations prescribed by the probate law for the government of executors and administrators. It is laid down in Story on Prom. Notes, § 104, that "in general by our law, unless otherwise specially agreed, the taking of a promissory note for a pre-existing debt, or a contemporaneous consideration is treated *prima facie* as a conditional payment only; that is, as payment only if it is duly paid at

maturity." This presumption is but *prima facie*, and may be rebutted by proof of a different intent. And the fact that taking such note as payment would deprive the party taking it of a substantial benefit, or where he has other security for the payment, has a strong tendency to show that the note was not intended as payment." (2 Pars. Cont., p. 136, note *o*.)

In this case none of the receipts read in evidence specify that the note and accounts received by the administrator were to be received as actual cash payments to the full extent of their face values, but merely that they are to be credited on the note sued on. The receipts given by the attorneys who had these claims for collection, negative the idea that they were so received by the administrator. But even if the administrator had consented to receive these claims in payment of the debt sued on, he could not have done so, for the statute (Hart. Dig., Art. 1185) requires the administrator, when he desires to purchase property, or receive any claim for the use and benefit of the estate in payment of any debts due the estate, to file a petition in the Probate Court at a regular term thereof, setting forth facts which show it to be the interest of the estate that such order shall be made; the chief justice, if satisfied of that fact, shall then grant the order. The plaintiff filed an amendment setting out, in substance, that the chief justice had made no order authorizing the administrator, in this case, to receive claims in discharge of the note sued on. The *onus probandi* rested upon the defendants to produce the order, which was not done. The real question presented by the assignment is whether the statute referred to is repealed or has become inoperative, for its application to this case cannot be doubted. This case fully illustrates the propriety and necessity of such a law, controlling the discretion otherwise vested in executors and administrators.

The defendants seek to entail upon the estate a loss of more than five thousand dollars, fully one third of the face value of the notes placed in the hands of the administrator, when the action taken by the auditors shows that these claims were worthless. With such evidence of the absolute necessity of enforcing the statute, it will be hardly necessary to follow counsel for appellant

in his circuitous attack upon the act above referred to. The defendants were aware of the fact that this note was the property of the estate of Caruthers, and cannot be heard to complain that they were ignorant of the law regulating the disposition and management of the trust property. Plaintiffs gave them credit for all moneys proved to have been collected and applied to the payment of the note sued on, and only sought to prevent the estate from losing by an act of carelessness or kindness on the part of the administrator. The defendants knowing this law, must be presumed, where their acts are equivocal or susceptible of two constructions, to have intended to do what was lawful and right; for it is a rule of construction that when the language of a contract is ambiguous and may be interpreted in two ways, one of which would make the contract illegal and the other lawful, the court will take that view of the contract which coincides with the law and the duty of the party.

The administrator was at perfect liberty to receive the notes and accounts as collateral security; it is evident from the whole tenor of the transaction that such was his intention. But even if his intention was to violate the law and to disregard his duty, this court will not carry out and enforce his designs; it will not permit third parties to speculate on the laches and frauds of the administrator. The case cited from 18 Tex. R., 675, has no application. It only establishes the general rule that every presumption is indulged in favor of judgment, and that administrators are sometimes estopped from setting up legal defences when they have been guilty of gross frauds, which have affected injuriously the parties complaining. In this case the answers filed do not show that the defendants have been injured, or that the administrator refused to deliver up the balance of the notes and claims placed in his hands. The report of the auditors, though not acted on at the trial, shows that the notes and accounts remaining were worthless. The report was never rejected or condemned. The plaintiff filed a plea setting out or referring to the report, in which he stated that the auditors had reported the balance of the claims worthless, which said plea was not controverted or denied, and may therefore be taken as evidence of the fact. In order to hold

Trammell v. Swan.

the estate bound it must be shown that it has profited by the acts of the administrator. Estoppels are based upon the idea of fraud accompanied with injury; both must concur in order to make the principle effective.

The party complaining must be misled to his injury by the acts or conduct of the other party, and moreover he must be left in such a condition that he cannot be placed in *statu quo* otherwise than by enforcement of this principle. In this case defendants made plaintiff their agent to collect and apply the proceeds of these notes and accounts to the claim in suit, and if loss should accrue it must fall upon the party who has trusted most or been most careless. At least the estate should not be made to suffer unless it has been profited by the possession of the claims, and only to that extent. If the administrator has converted them to his own use, or has not accounted for them, he is personally liable. An administrator has no power to acknowledge a debt, barred by the statute, nor to create a valid claim against the estate he represents, except so far as he is authorized by statute, nor has he any right to release or discharge a debt due to the estate without consideration.

The statute above referred to evidently intended to withdraw from the administrator all power of exchanging or trading off the debts due the estate. This right could only pass to him by a formal judgment of the court. The statute having prescribed a mode by which the exchange could be effected, negatives any other mode. It withdraws the discretion from the administrator and vests it in the court, for the purpose of protecting the estate against his negligence, misconduct, or ignorance. The legislature were not satisfied with the security offered by the administrator's bond, which in many cases was illusory and unsubstantial. It determined to restrain his power over the assets, and thereby check the abuses which had grown out of it. Those who deal with estates should be held bound by the laws which regulate them; if they are injured, it results from ignorance or negligence on their part, and it is better that persons who are capable of contracting and informing themselves of the law should suffer by their negligence, than that the interest of creditors, infants and married wo-

men should be left to the interested discretion of administrators, and the frail and fluctuating security of a bond. If the judgment vests the authority in the administrator, the want of it must render his acts invalid. It is a general rule that an agent who exceeds his authority does not bind his principal, and that a person who assumes to act for another in matters not confided to him, does not thus bind others. So where an authority is given to two jointly to sell the property of the principal, one of them cannot separately execute the authority. Almost every infraction of the article referred to must result in injury to the estate or to the party dealing with it, and if these injuries operate as estoppels, and close the mouth of the administrator, the law will be virtually silenced or repealed. The act complained of is a fraud, not upon the purchaser, for he had equal means of information with the seller, but upon the estate. It was not more the duty of the seller than of the purchaser to know the law. The contract made by the administrator, if the construction contended for by the appellant prevails, amounts in effect to a sale or exchange *pro tanto* of property belonging to the estate, and the rule *caveat emptor* would apply. It devolves upon the purchaser to establish his set-off or payments, and he can only do this by producing the order of the chief justice, authorizing him to make the contract referred to, otherwise the plaintiff would be compelled to prove a negative. The case referred to in 13 Tex. R., 248, cannot properly be held to apply to this case. In that case the claim against the estate had been properly authenticated, allowed and approved. The administrator had expressly agreed to allow it in offset to the claim sued on, and the defendant, relying upon the agreement, made no defence. The receipt, marked "exhibit B", contains a number of small claims against the estate of Caruthers, amounting to about $248, which defendant had purchased in against said estate. It is believed that there was no evidence that they had been authenticated, allowed or approved. But if the amount contained in this exhibit is deemed a proper subject of set-off under the above rule, it is still insisted that there is no room for reversal on this score, as the statement of facts shows that the plaintiff admitted all the actual payments made on receipts embraced in the exhibits A B C & D,

without stating the amounts or by whom paid. It is believed that the court will indulge every presumption in favor of the validity of the judgment. It was the duty of the defendants, if they sought to avail themselves of this objection, to have shown that they have been injured by the ruling below. But the statement of facts is perfectly consistent with the idea that these claims against the estate had been paid off and discharged by the administrator, payments to a large amount being admitted as above stated. The separate answers of Walling and Stroud, setting up their securityship, were not directly ruled out, so far as appears from the record. The presumption is that it was evaded, no evidence having been adduced to the jury in support of them. At least they have no cause to complain, having failed to bring these pleas to the attention of the court on the trial.

These pleas were filed by Walling & Stroud on the 23d of November, 1855. No action was had on them until the 2d day of November, 1857, when plaintiff excepted to these pleas among many others subsequently filed. After this time defendants filed three or four amendments, to all which plaintiff excepted. No action seems to have been taken by the court until May, 1858, when the order, after setting out various rulings, proceeds as follows: "Plaintiff excepts to the answers of the defendant, which, being considered by the court, are sustained to such extent as to reduce said answers to pleas of payment in money, with leave to defendants to amend, and the defendants having again amended, the plaintiff excepts thereto; which, being considered by the court, are sustained as to the plea of the statute of limitations, and to such extent as to reduce the answer as amended to a plea of payment in money."

The fifth assignment embraced in appellant's brief is as follows: In sustaining plaintiff's exceptions to the several answers of the defendants, "to such extent as to reduce the answers, as amended, to a plea of payment in money." The sixth assignment contains the same objection, but confines it to a particular plea. It is believed that neither of these assignments reach the answers filed November 23, 1855, by Stroud & Walling. If, however, the court should consider otherwise, it is contended that they were

properly overruled. The parties filing these pleas charge in substance that they are mere sureties on the note in suit; that they signed the same at the instance and request of Trammel, the principal in the note. That the consideration of said note was certain goods purchased by Trammel of Legrand, administrator of Caruthers; that said goods belonged to said estate; that the sale was only pretended, the administrator returning the goods and using them; that said purchase was really for the benefit of the administrator; that the purchaser and the administrator colluded together for the purpose aforesaid, and that the securities were ignorant of the agreement aforesaid, to which reference is made; it is contended that this plea is invalid because it does not show that the sureties have been damaged. It charges fraud. But it has never been held by this court that fraud, without injury, was a sufficient ground to annul a contract. The fraud which will justify the rescission of a contract, must be such as prejudices the rights of the party complaining. The misrepresentation which will vitiate a contract, must be of a material matter, and which, if not made, the purchaser would not have entered into the contract; and when the fraud is by acts or complaints, the same rule prevails. Here the sureties have not shown that Trammel was incapacitated by reason of his agreement to pay for said goods, or that if the sureties paid the debt, their remedy over would be lessened or impaired. The pleas referred to, instead of leading to the conclusion that the sureties have been injured, would lead directly to the opposite conclusion by showing that the purchaser had taken a dormant partner. It is admitted that the heirs, &c., of the estate might set aside a contract by which the administrator had acquired an interest in the property purchased. In other words, that the contract was voidable, and not void. The administrator *de bonis non* having adopted the contract and sued upon it, waived the objection to the contract. Even if no such waiver had taken place, still, as the contract was only voidable at the election of the heirs, &c., the sureties of the purchaser could not take advantage of it. The purchaser was the agent of the sureties for the purpose of receiving the goods and disposing of them. They cannot, therefore, complain of the acts and conduct of the purchaser. It is not

averred that the goods were retained for the use and benefit of the estate, nor was it shown that the administrator so appropriated them. If the estate had profited by the fraud of the administrator, and the sureties had been injured thereby, a different question would be presented. It is a familiar principle that where one of two persons has suffered by the acts of a third, he who has been most negligent, or who has trusted most, shall lose most. If the sureties have suffered by the acts of their principal, or of the administrator, they have their remedy against the administrator in his individual capacity. Again, it has been decided by this court that an estate is not bound by the fraudulent concealments of an administrator; the arrangement between the purchaser and administrator gives of itself no cause of action to the securities, for if they were aware of its terms they cannot complain, as no fraud would then be committed on them. The only complaint that can be made by the sureties, is that the administrator remained silent.

The remaining assignments need not be discussed. The administrator brought suit upon a note belonging to the estate. The defence was predicated upon the fact that the consideration of the note was property sold by the administrator belonging to his intestate's estate. This is enough to warrant a recovery without the introduction of the orders of the probate court.

*Wm. Stedman,* also for the appellee.—It will be observed by the court that the statute of limitations was never pleaded below. The facts are, that the cause was called for trial, and the defendants submitted an application for a continuance, which was overruled. On the next day the trial commenced, and after the court had acted on the defendants' demurrer to the petition, they asked leave to amend by pleading the statute of limitations, which was refused. In this there clearly was no error.

The statute (O. &. W. Dig., Art. 434,) provides that the parties may amend before an announcement of readiness for trial, and not thereafter; and this court has declared in the case of McIntyre v. Chappell, (3 Tex., 10,) that to allow an amendment after the trial has commenced, would be a total disregard of the statute, and that in such a case the judge has no discretion. The case

cited by the appellants and others of a like character, clearly refer to a different state of facts from the present case, and merely establish that when exceptions to pleadings are sustained, leave to amend the pleadings excepted to should be allowed, that is if the party has not sufficiently stated his cause of action, or ground of defence, he should be allowed to do so. (Croft. v. Rains, 10 Tex. Rep., 520 ; Jennings v. Moss, 4 Tex., 452 ; Phillips v. Patillo, 18 Tex., 518.) " There must be a period in the progress of the cause beyond which it will be in the discretion of the court to refuse leave to amend." (Matossy v. Frosh, 9 Tex., 610.) And " the power to grant leave to amend when not forbidden by law, is a discretionary power—the exercise of which will not be revised by the appellate court." (Austin v. Jordan, 5 Tex., 130.)

II. It is submitted that there can be no question as to the character in which the plaintiff brought this suit. There have been numerous decisions both in England and America on this question, and there has been some conflict in them. At one time it was thought that as to whether the suit was brought in the representative character of the plaintiff, could only be determined by the employment or omission in the declaration of the word " as ;" but more recent adjudications have denied to the word " as " the potency which the earlier cases gave, and have established that a case may be well brought by a plaint'ff in his fiduciary capacity without the use of that word.

The most of the cases cited by the counsel for the appellee in his two last briefs, have no earthly application to this case, as in them the question was not whether the suit was brought in the individual or representative character, but whether, in the particular case, the suit was properly brought in the capacity in which the plaintiff had sued. Such are the cases cited by the learned counsel from Bibb's Ky. Reps. ; and those from East, Alderson & Barnwell, and Harrison's Reports, and others.

The case cited of Hood v. Link, (2 B. Monroe, 37,) is in point, and there the court says that the words " administrator " or " administrator as aforesaid," in a declaration against executors or administrators in actions founded on their own acts, is by no means decisive of an intention to charge the defendant in his representa-

tive character, and such additional words will be taken as mere description of the person where a personal liability is shown in the declaration, unless the intention to charge him in his representative character be otherwise unequivocally demonstrated.

This question came before the Supreme Court of Arkansas in the case of Hemphill v. Hamilton, (6 English, 425,) and all the authorities, both English and American, were reviewed and discussed by Justice Walker in a most able and learned opinion, and it was held by the court that it was immaterial whether the plaintiff described himself "administrator of," &c., or "as administrator of," &c., and that he would be considered as suing in his representative character, whether the one or the other mode of expression is employed, if it sufficiently appears from the pleadings that he had elected to sue in that capacity. And it is respectfully submitted that such is recognized to be the rule in this State in the case of Hall v. Pearman, 20 Tex., 170.

The only decisions of this court upon the question are the case of Gayle v. Ennis, (1 Tex., 184,) in which it is only ruled that a note payable to an executor or administrator may be sued upon by him either in his individual or representative character at his election, and the case of Hall v. Pearman, above referred to, and the case of Lipscomb et al. v. Ward et al., 2 Tex., 227, and Groce v. Herndon, 2 Tex., 410, in which the rule declared in the case of Gayle v. Ennis is recognized.

The English rule, as fixed by the later decisions, is believed to be that if the cause of action stated in the declaration arose in the lifetime of the intestate, it is sufficient to determine that the administrator sues in his representative character if he describes himself "administrator of," &c., but if the action accrued to the administrator, then he must sue "as administrator," &c.

III. The question now is, did Legrand, at the time of the institution of this suit, elect to sue in his representative character? and it is submitted that he did, without question, as is shown by the record of the case. It is true that, in his original petition, he describes himself "administrator," &c., without using the all-important word "as," and it must be admitted that the petition is loosely drawn; but throughout the entire case he is described and

32Y

treated as administrator, particularly in the pleadings of the defendants, and in the amended petition, the character in which he sued is stated so distinctly as to remove all doubts that might exist with regard to the original petition.

The note sued on was given for assets of the estate; the matters pleaded in defence, particularly those embraced in the attorney's receipts, could only be pleaded against the estate, and could, in no event, apply to the plaintiff as an individual, and it is thought that after the defendants had litigated with him for years as administrator, they cannot now be heard to question the fact of his having sued in that right.

*S. G. Swan*, for himself.

WHEELER, C. J.—Our opinion upon one question presented by the record will require a reversal of the judgment, and will, therefore, supersede the necessity of an authoritative decision upon other questions raised by the assignment of errors. We think it free from doubt that the separate answer of the defendant Walling presents a good defence to the action as to him. If, as alleged, the pretended sale of the goods, for which the note was given, was not a real but a merely simulated sale, and the property in the goods did not pass to the pretended purchaser, and the defendant Walling was induced to execute the note in ignorance of the facts, and under a deception practiced upon him by the other parties to the note, it certainly created no binding obligation upon him. A party can not be bound by an act into the doing of which he has been thus drawn by false colors held out to him, and under a supposition that he is acquainted with all the facts, when they have been suppressed by the parties. The procuring of his signature, under the circumstances stated in the answer, operated a virtual fraud upon the defendant, and avoided the contract as to him. (1 Story's Eq., § 383.) The only matter of doubt is, whether the exceptions to this answer were brought to the attention of the court, and embraced in the ruling of the court upon the answers of the defendants. It is insisted by counsel for the appellee that they were not; and upon this point we have entertained doubts.

But whatever doubt there may be as to the fact, we think it can not be safely affirmed upon the record, that the answer in question was not embraced in the ruling of the court upon the exceptions. This answer was particularly designated and pointed to by the exceptions; and the language of the entry of the judgment is, that the exceptions to "the answers of the defendants are sustained to such extent as to reduce said answers to pleas of payment in money," &c.   This language of the entry is susceptible of different interpretations; but as the exceptions extended to all the answers of the defendants, and the entry of the judgment upon the exceptions does not distinguish between them, we think it would be going too far to say that all were not embraced in the judgment.   We have considered all the material questions in the case, and incline to the opinion that there is no other error in the judgment; and think it proper to intimate this opinion in view of another trial, as the questions have been very thoroughly examined by counsel in argument.   It will not be necessary at present to go at length into the reasoning upon which we found our opinion.   It will suffice to say, that as the capacity in which the plaintiff sued and sought a recovery in the action was not put in issue by plea, it was unnecessary on his part to prove his representative character, or his right to recover in that character upon the trial.   (Clifton v. Lilly, 12 Tex. R., 130; Id., 112.)   The rulings of the court, therefore, upon evidence offered for that purpose, are immaterial.   Neither was there any issue before the jury, after the ruling of the court upon the exceptions to the answer, touching the consideration for which the note was given. It was averred that the note was the property of the estate of the plaintiff's intestate, and this was not denied or put in issue by the pleadings.   There was, therefore, no necessity to prove it.   It would probably be found, upon examination, that there is no error in the rulings upon the admission of the evidence; but they are not material.

Whether the suit was brought by the plaintiff in his own right, or in his representative capacity, was material only in reference to the attempted defence of the statute of limitation; and we are of opinion that the plea of the statute was not inter-

posed in time, and that on that ground the court did not err in sustaining exceptions to the plea. The defendants had had ample time to plead. The court had ruled upon exceptions to the pleadings, and upon amendments, after the cause had been called for trial; and we think the court might well refuse to entertain further amendments. There is a limit to the right of amendment; and where time and opportunity have been afforded to remedy defects in the pleadings, parties have not the right to delay the trial and hinder the progress of the business of the court for that purpose. As the defence of the statute was not pleaded in time, it is unnecessary to examine the case in reference to that defence.

We think the court ruled rightly upon the pleas of payment. The statute contemplates an order of the court to enable an administrator to receive claims in payment of a debt due the estate. (O. & W. Dig., Art. 750.) Parties are presumed to know the law; and the defendant in giving, as well as the administrator in receiving, the notes and accounts in payment of the debt due the estate, acted in violation of the law; and the doctrine of estoppel *in pais* has no application to the case.

We are of opinion that the judgment be reversed and the cause remanded for further proceedings.

Reversed and remanded.