## E. EDMONSON V. H. T. GARNETT, ADMINISTRATOR.

1. Without authority from the probate court, as provided for by Article 1337, Paschal's Digest, an administrator has no power to accept a bond of third parties in satisfaction of a debt due. the estate he represents. (The case of Hamilton v. Pleasants, 31 Texas, 638, cited and approved by the court.)

2. In a suit between an administrator and another party, it seems that the administrator cannot be made liable in his individual capacity for injury resulting from his unauthorized acts as administrator. (The case of Johnson v. Brown, 25 Texas, Supplement, 129, cited by the court.)

3. If, on an appeal from a decree dissolving an injunction and awarding damages thereon, it appear that the damages adjudged in the court below are in excess of the rate allowed by the statute, this court will cause the excess to be rebated, but will not reverse on that account.

APPEAL from Fort Bend.

This is an appeal taken from a decree of the court below, dissolving an injunction obtained by Edmonson against execution of a judgment against him and others, in favor of the appellee as administrator *de bonis non* of the estate of E. R. Bradley, deceased. The judgment enjoined was recovered in 1860, but the stay laws suspended execution of it during the war, until in April, 1865, Garnett, for the purpose of obtaining execution, made affidavit that Edmonson had abandoned. the country and gone to Mexico, with no intention of returning. This affidavit was designed as a compliance with the proviso in Article 5125, Paschal's Digest.

On the execution thus obtained the sheriff made the following return : " Settled as within stated by the plaintiff in the case (H. T. Garnett, administrator *de bonis non* of the estate of E. R. Bradley, deceased,) taking bond of S. A. Towsey, agent for Dr. E. Edmonson, for the payment of this judgment, and releasing this execution, this seventeenth April, 1865."

No further action was taken until in January, 1868, Garnett sued out another execution and caused it to be levied on property of Edmonson ; and the latter sued out the injunction involved in this case, to stop the sale under this last execution.

The opinion of this court indicates such other features of the case as are material to the rulings made.

*A. P. & E. W. Thompson,* for the appellant.—It is clear that the execution of 1868 could not have been issued regularly,. while it appeared of record that the judgment had been settled and the execution returned satisfied. It seems to us, that even admitting the satisfaction of the execution for want of authority or consideration, still it was not *eo ipso* void, but voidable only. And before he could be entitled to another execution the judgment debtor ought to have taken the necessary steps to set aside the return, upon motion or other proceeding, when the defendant would have received notice and been heard. It follows, therefore, that while the execution remained satisfied on the face of the return and the judgment settled, an injunction restraining another execution on the same judgment was most properly issued. The grounds upon which the return could be set aside were matters of averment and proof by the plaintiff in execution. The consideration paid by the execution debtor remained in the plaintiff's possession. How then could the satisfaction be set aside, upon mere exceptions, in the nature of a demurrer, to the allegations of the bill of injunction ? Upon its face, the execution was satisfied and the execution settled, and, of course, must stand until set aside. It was acquiesced in and no complaint made of it for nearly, very near, three entire years. The facts making it voidable were in the plaintiff's own want of authority for his own acts, and his own failure to collect or try to collect the bonds he held n his own hands. He does not pretend that he even gave us any notice of his dissatisfaction of the settlement which he himself for a val-

uable consideration had made. This acquiescence is clearly alleged in the petition.

It seems to us that the plaintiff entirely mistook his remedy. He waited for the injunction to be issued, and then in a cross bill asks for the nullity of the voidable return. Let us admit that in our system of pleading he can do this in the injunction suit (and we shall ask this court to grant us the same latitude when we seek a judgment *de bonis propriis* in our reclamation or reconvention against a plaintiff administrator, since our wrongs complained of arise out of his acts as administrator, of which he himself alleges the want of authority), yet he could not ask a dissolution of the injunction until he had done it in some way. The injunction was properly issued and properly maintained until this was done. With what face, then, could he ask, not only a dissolution of the injunction, but, moreover, damages, as if it had been sued out by us merely for delay, or as the statute says, "*only* for delay." He had become an actor before it could be dissolved at all. Enough upon this—let us pass to his next ground of special exception.

The next and the main ground of exception which we shall treat of is the supposed want of an allegation that the plaintiff in execution was authorized by a special order of the Probate Court to made the settlement he did make. We call the notice of this appellate court to the phraseology of this exception. It does not say that there is no allegation of the want of due authority, but no special order authorizing the administrator to make the settlement. This assumes that the pleader was obliged to set out such a special order. Of course it implies that the order itself should have been stated, that the court might judge of its validity.

We submit that this is contrary to the theory and the usual rules of pleading. When it is alleged that an administrator did a particular thing, it is meant to say that he had such authority to do it, as the law requires. The allegation actually is that the plaintiff in execution, by his acts, held himself out as being duly au-

thorized to do what he did do, and induced the defendant in execution to believe that he was duly authorized to make the settlement he did make. This would be requiring a degree of nicety in the pleader which is foreign to our system of pleading. The allegation was meant to be, and, fairly considered, it does actually imply and include an allegation of due and lawful authority. The court will bear in mind that this is an injunction case, and the petitions have to be sworn to; also, that the administrator in this case was a lawyer and acting as his own attorney-at-law. Moreover, we invoke the admitted rules of pleading. If a pleader alleges an act done, or contract made by another done through an agent, or as a trustee, and the authority of the agent or power of the trustee is called in question, it is for the pleader, denying the authority or the power to dispute the validity of the act or the power to do it, to plead this want of authority by averment and to establish it by law or fact.

Another rule: It is incumbent on that party to make allegation of those facts in whose knowledge they most appropriately are, and no one is held bound to allege specifically those facts. which are more properly within the knowledge of the opposite party, and more particularly when the pleadings are made under the sanction of an oath. And in the case at bar we call on the defendant in injunction to make known by what authority he did what he did. But instead of denying any authority whatever in the administrator, he excepts—demurs to the want of allegation of a specific kind of authority. It is true that he alleges in his answer and cross bill that no such special order was made by the Probate Court; but this allegation is not to be taken for true on this demurrer. It is only alluded to in order to show that the defendant himself felt that this want of special authority from the Probate Court, or other sufficient authority, was properly a matter of averment by him, and not by us.

We are very far from admitting that any such special authority

was necessary in law. Certainly, at common law, an executor or administrator had such authority. He could endorse a note and . pass the property; he could make a transaction or a compromise; he could grant a release; receive a payment; give an acquittance—in a word, he could do with the property and choses in action of the testator or intestate exactly what the testator himself could do, subject only to account to the legatees and creditors, as on a *devastavit*. So far as choses in action are concerned, our probate court law has not abrogated these powers of an 'administrator. He is bound to certain modes of sale in order to pass the property of the estate; and it is his duty to collect choses in action. Our probate court act does not pretend to give a catalogue of all the acts which an administrator can do, and thereby, upon the principle *inclusio unius exclusio alterius*, preclude him from doing any other act. It is "an act to regulate proceedings of the county court, pertaining to the estates of deceased persons," by its very title.

The only section of this act which at all touches upon the subject of this special exception, is the seventy-sixth section, and this is merely permissive, not mandatory, authorizing him to purchase property or make compromises, with the assent of the court. It is made for the protection of the administrator or executor. If he wishes to protect himself from subsequent liability for any transaction he may think for the interest of the estate, in the language of the statute, "he may present a petition" to that effect, and cover himself with the shield of a decree. Certainly there is no prohibition here for him to act on his own responsibility, subject to account for it. (P. D., Art. 1337, p. 325.)

The same reasoning will apply to the act of the Eleventh Legislature. (Ch. 90, 1866.) Here the power of compounding debts seems to be declared as to bad and doubtful debts. It is also for the protection of the administrator, but limits his power and places his action under the control of the court. This act was

passed nearly two years after the settlement in question before this court, and cannot, therefore, affect the case at bar. So far as it recognizes the power in administrators to compound void or doubtful debts, it is declaratory and protective of the administrator. Its *proviso* is the first legislative limit to the power. Surely an administrator could, even after the passage of this last act, compromise a debt by consent of the legatees, distributees, etc.; and it is noticeable that the defendant in this case nowhere denies that he had their assent. He rests his exceptions solely on the ground that he did not have an order of the probate court.

This exception would be entitled to more consideration, at the hands of the court, if the suit brought by the heirs or legatees or other distributaries of the estate to enforce the collection of the judgment, and the settlement by the administrator were set up by way of obstacle to their recovery, and they replied the want of authority in the administrator, or even if the suit were by another administrator. But here the same administrator is permitted to come in and allege the nullity of his own acts, and these acts done for a consideration which he retains.

Then came the amended petition of the twentieth of March and the demurrer to that filed on the twenty-third. Then the amendment of the twenty-third by the plaintiff, which the court does not seem to have considered sufficient to maintain the suit. And then the judgment of the twenty-third, which, so far as it sustains the exceptions or demurrer, is only a repetition of the judgment of the nineteenth of March, applied to the amendments of the twentieth and twenty-third.

We repeat that the court ought not to allow an administrator or trustee to impugn the authority of his own acts, to the fraud and detriment of those who have acted with him upon his presumed authority. This would be permitting a man to take advantage of his own wrong. But if the court will so allow, it surely will at the same time, and in the same suit, make the wrong-doer responsi-

ble for the injury done by his exceeding his authority as trustee or administrator, by a judgment against him *de bonis propriis.*

And this brings us to another special ground of exception by the defendant, namely, that the petition seeks to charge the defendant in his individual capacity, and not as administrator, while the suit is against him as administrator.

We confess that we are at a loss to perceive the force of this exception. Our claim to this satisfaction from him arises out of the very same acts charged in the petition, and from the fact that he pleads (not that he did not do the acts, for that cannot be considered in demurrer,) that the law gave him no authority to do these acts in his representative capacity. Well, then, we reply, if you did them not in your representative capacity, respond for them in your own person. What reason is there against this? Why will the court turn us over to another suit, when the parties are before the court, and the subject matter—the substantive acts complained of—are before the court?

It cannot be for want of notice of our ground of complaint against him in his individual capacity. Upon the question of notice, no sound distinction exists between the capacities in which the same individual is informed of a thing. If he knows it in one character, he must necessarily know it in the other, and every other. This notice is a mental thing, and the same mind cannot be notified of a fact officially, without at the same time knowing it individually. And, moreover, it is he himself who, by his pleadings, informs us of his liability. By denying his official or representative power to do the act, he at once assumes it as a personal and individual act, and his liability for the consequences at once results. No! the true and only reason is that while his individual liability is being litigated the estate he represents might be delayed of its rights. But this cannot be. The injunction had already been dissolved before our petition to hold him personally liable had been filed, and the demurrer had been sustained, which

decided the estate was not bound by his acts. Hence we claim that the court should not let him go without making restitution to us, as an individual, for the wrong done us while he was pretending to act as a trustee, or administrator, which, according to himself, he was not authorized to do.

Equity abhors a multiplicity of suits, and our courts have carried out this principle in almost every instance brought before them. It must be something more than a mere technical form of action which will induce our courts to send a complainant out of court, when the party complained of is in court, merely to bring another action against the same individual.

And the defendant here, as we intimated before, has had the benefit of this principle in reference to his remedy in the matter of the execution and judgment.

We do not think it necessary to cite authorities to sustain this view. The liberality of our system of pleading has been too long established in this respect, and too often decided, to require authority, or even the argument we have made. And the same remark applies to our rights to set up a new cause of action growing out of the same circumstances.

Again, they say that the damages we claim are undefined and unliquidated. We ask for their liquidation. They are defined by reference to the petitions: That the defendant had led us by his acts to surrender a security which we held against Towsey; that he has discharged a levy upon slave property and other property enough to pay the judgment, and postponed a sale until, as is judicially known to the court, one kind of property has, by operation of law, ceased to be property; and, as is known to the court as a matter of public history, another kind of property levied on has greatly deteriorated in value in consequence of the destruction of the former kind. That he has kept the bonds in his possession, and we could not recover against Towsey while his bond was outstanding to pay our debt, etc., etc. The allegations of our peti-

XXXIII—17.

tion amply define how we have been damaged, and exclude all vagueness.

Nothing is more common in suits in equity, where trustees are parties as such, than to set aside their unauthorized official acts, and, at the same time, and in the same suit, to hold them personally responsible in their own property. The books of reports are full of such instances.

*Waul,* for the appellee.

WALKER, J.—This was an injunction sued out by the appellant to restrain the defendant in error from enforcing the collection of a judgment granted in his favor June 22, 1860, in the District Court of Fort Bend county. On demurrer the injunction was dissolved, and by cross petition, damages given. The briefs presented by appellant's counsel are of masterly skill and ability, and but for the adjudicated cases, some of the questions raised would put this court upon very earnest inquiry; but an examination of the whole case has resulted in satisfying us that no material errors have been committed by the court below. It is contended that the amount of damages given for suing out the injunction are excessive, as the execution was only for one-fourth the judgment.

This is true, but the injunction restrained the whole judgment; and therefore we do not see that there is any excess of damages. If it should be found on calculation that the damages amount to more than ten per cent. on the judgment, the court herein direct that the excess be rebated.

The fact is not established that Garnett, the administrator, took the bond of Towsey and Bingham in satisfaction of the judgment in favor of Bradley's estate; and not being satisfied that the evidence makes out this fact clearly, we deem it unnecessary to notice the points raised upon the question by the very learned counsel

for appellant.    And if it were otherwise, all we can say is, that
he had no right, power or authority to do so, other than that which
he must have derived from the county court. (See Paschal's Dig.,
1337; Trammell v. Swan, 25 Texas, 473; Hamilton v. Pleasants,
Galveston term, 1869.)    These latter decisions are sharply at-
tacked by the learned counsel for appellant, and with a skill worthy
a better cause; but we must say, *stare decisis.*    Concluding that
possibly the court might hold against the appellant, we are asked
to give relief against Garnett in his individual capacity.    In this
too we are precluded by the authority of Johnson v. Brown, Sup
25 Texas, 129.    From an examination of the whole record, we
are of opinion that the judgment of the court below is in no
essential erroneous, and it should therefore be affirmed.    The con-
duct of Edmonson is severely criticised in the brief the appellee.
We will not say that the bounds of professional license have been
transcended; nor do we in the least deny that the record exposes
him to this kind of animadversion.    The pleadings being sworn to,
we naturally look to them for the facts in the case; and in view
of the facts disclosed, the damages appellant has brought upon
himself are both moral and pecuniary.    The judgment of the Dis-
trict Court is affirmed.

Affirmed.